Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 947 | **DATE** | 9/18/2002 |
| **CASE TITLE** | Chisholm vs. Cancer Treatment Centers of America, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Motion of defendant Cancer Treatment Center of America for summary judgment [13-1] is denied. Cancer Treatment Foundation is dismissed with prejudice as a party-defendant. Parties are directed to meet in a sincere effort to resolve this case before trial. If settlement is not reached, the case will be called for trial on October 7, 2002 at 10:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 19 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | G.Y. docketing deputy initials | 26 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | 9/18/2002 date mailed notice | |
| MD | courtroom deputy's initials | 2002 SEP 18 PM 3:53 Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE CHISHOLM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 01 C 0947 |
| | ) | Judge Joan H. Lefkow |
| CANCER TREATMENT CENTERS | ) | |
| OF AMERICA d/b/a CANCER | ) | |
| TREATMENT CENTERS OF AMERICA | ) | |
| PROFESSIONAL CORPORATION OF | ) | |
| ILLINOIS, S.C. and/or CANCER | ) | |
| TREATMENT CENTERS OF AMERICA, | ) | |
| INC. and/or CANCER TREATMENT | ) | |
| CENTERS OF AMERICA - VIRGINIA, INC. | ) | |
| and/or CANCER TREATMENT RESEARCH | ) | |
| FOUNDATION, INC. and/or CANCER | ) | |
| TREATMENT SERVICES, S.C., | ) | |
| | ) | |
| Defendants.[1] | ) | |

DOCKETED SEP 1 9 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff, Valerie Chisholm ("Chisholm"), brought this lawsuit pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.*, alleging that defendant, Cancer Treatment Centers of America ("CTCA"), discharged her from her position as Executive Assistant to the Chief Executive Officer ("CEO") because of her age, 62, and retained younger and less experienced employees to perform her former duties. Before

---

[1] Cancer Treatment Centers of America, Inc. ("CTCA") and Cancer Treatment Research Foundation, Inc.("CTRF"), answered the complaint on June 1, 2001. No other entity named in the complaint has answered and the court assumes that all the suable entities are before the court. Defendants denied that CTRF was plaintiff's employer (Ans. ¶ 15) and on the pending motion contend that CTRF must be dismissed. Chisholm responds that she has no objection to the dismissal. (Resp. at 14.) The court will, therefore, dismiss CTRF as a defendant.

1



the court is CTCA's motion for summary judgment. The court has jurisdiction over Chisholm's ADEA claim under 28 U.S.C. § 1343 and 29 U.S.C. §§ 219 and 626. For the reasons set forth herein, CTCA's motion for summary judgment is denied.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must apply the summary judgment standard with "added rigor" in employment discrimination cases, where intent is the central issue. *Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150, 152 (7th Cir. 1994).

2

## CTCA'S REQUESTS TO ADMIT

CTCA rests its motion for summary judgment in part on "default admissions" made by Chisholm. Federal Rule of Civil Procedure 36(a) requires timely responses to requests to admit, and failure to respond will result in admissions.[2] The essence of the dispute is whether an agreement between counsel to extend to October 1, 2001 the time for Chisholm to respond to outstanding interrogatories and requests for documents extended, by implication at least, plaintiff's time to respond to the requests to admit. On October 1 Chisholm served the discovery, as agreed, along with Chisholm's answers to the requests to admit. CTCA now represents that Chisholm only requested and CTCA only agreed to an extension to answer its request for documents and its interrogatories but not to answer its requests to admit. Chisholm responds that the court has discretion to accept her answers because CTCA has not shown prejudice, her answers were but a few days late, and the delay "was obviously a misunderstanding among counsel." (Resp. at 13.)

"[T]he proper procedural vehicle through which to attempt to withdraw admissions . . . is a motion under Rule 36(b) to withdraw admissions," *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000), quoting *Kasuboski*, 834 F.2d at 1349, which plaintiff has not done here. Otherwise, "[a]ny matter admitted under this rule is conclusively established . . . ." Fed. R.

---

[2]Fed. R. Civ. P. 36(a) provides,

A party may serve upon any other party a written request for the admission, for purposes of the pending action only. . . . The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney. . . .

3

Civ. P. 36(b). Nevertheless, the court may construe plaintiff's argument as a request to withdraw admissions, *see, e.g., United States v. Branella*, 972 F. Supp. 294, 301 (D.N.J. 1997), and may permit withdrawal "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Fed. R. Civ. P. 36(b).

In *Branella*, 972 F. Supp. at 301, the court allowed withdrawal where the plaintiff's two-week delay in answering requests to admit caused no prejudice. Like the two-week delay in *Branella*, Chisholm's eight-day delay in answering CTCA's requests to admit caused no prejudice to CTCA where CTCA had ample opportunity to examine the answers before the close of discovery.[3] Indeed, CTCA deposed Chisholm's witnesses on January 25, 2002 and February 4 and Chisholm on February 6 and asked them questions similar to the ones raised in its requests to admit. Accordingly, the court construes Chisholm's response as a motion to withdraw her default admissions and grants the motion. The facts set out below, then, are stated in a light most favorable to Chisholm and incorporate her answers to the requests to admit.

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF[4]

Chisholm began working at CTCA as a temporary employee in the Accounting and Finance Department in the fall of 1995. In spring 1996, CTCA hired Chisholm as Executive

---

[3] Discovery closed on February 15, 2002, nearly five and a half months after Chisholm served her answers.

[4] "Defendants [CTCA] and [CTRF]'s Statement Of Material Facts As To Which There Is No Genuine Issue Submitted Pursuant To Local Rule 56.1" and "Plaintiff's Statement of Additional Material Facts" are referred to hereafter as "Def. L.R. 56.1 ¶ __" and "Pl. L.R. 56.1 ¶ __," respectively. As with every summary judgment motion, the court accepts Chisholm's version of any disputed fact where it is arguably supported by the record. *Pluta v. Ford Motor Co.*, 110 F. Supp. 2d 742, 744 (N.D. Ill. 2000).

4

Assistant to the CEO, Joseph Gagliardi ("Gagliardi"). In June 1997, Gagliardi left and William Sanger ("Sanger") became CTCA's next CEO. Chisholm remained Executive Assistant to the CEO, as it was customary at CTCA that Executive Assistants went with the executive position and not the executive.

Normally, Chisholm was very secretive about her age. In mid-September 1997, however, Chisholm told Sanger that she had recently celebrated her sixtieth birthday. A few weeks after Chisholm told Sanger her age, Chisholm overheard Sanger ask Don Harvey ("Harvey"), CTCA's Eastern Regional President, if Harvey knew Chisholm's age. In response to Harvey's low estimate, Sanger said, "Oh, hell, no, she's 60." (Pl. L.R. 56.1 ¶ 22.)

After Chisholm told Sanger her age, Chisholm believed that Sanger's behavior towards her changed. For example, Chisholm organized "Michelle Robier" seminars, which were seminars for CTCA's executives on how to achieve their goals. For these seminars, Chisholm booked the rooms and organized the lunch. Although Chisholm had usually attended the seminars in the past, she did not attend the seminars while working for Sanger. Instead, Chisholm noticed that under Sanger another Executive Assistant, Susan Mingey ("Mingey"), attended the Michelle Robier seminars and also the internal monthly executive meetings.

CTCA had hired Mingey in 1997 as Executive Assistant to Robert Mayo, Vice Chairman of CTCA.[5] The Vice Chairman and CEO were on an equal level in the corporate structure, but Mingey was paid more than Chisholm even though she had less work. Furthermore, Mingey received more pay raises and a company-paid trip whereas Chisholm did not receive similar treatment from CTCA.

---

[5]Mingey worked for three other employees as well as Mayo.

After Chisholm told Sanger her age, Chisholm began to suspect that Sanger was trying to replace her with Mingey. While at CTCA, Chisholm never requested a transfer from her Executive Assistant position. Nevertheless, on or about October 10, 1997, Linda Cody ("Cody"), a Human Resources Specialist, suggested to Chisholm that she work for Mayo. During mid-December 1997, Chisholm spoke three times with Paul Bernius ("Bernius"), Vice President of Human Resources, about her perception that management wanted to replace her. On December 19, 1997, Bernius told Chisholm that she could transfer to the Accounting and Finance Department or accept a severance package. On that same day, Chisholm received a phone call from Deborah Fogel ("Fogel"), the Comptroller, who was angry because Bernius had asked her to create a position for Chisholm in the Accounting and Finance Department. In March 1998, Chisholm complained to Bernius that Mingey verbally "harangued" her by telephone and in person and accused her of inefficiency. (Pl. L.R. 56.1 ¶ 85.) In response, Bernius again suggested that Chisholm transfer to another department. In June and October 1998, Dan Capra ("Capra"), Vice President of Marketing, asked Chisholm to transfer to his department.[6]

At an unspecified time Sanger put Chisholm on a list for potential layoffs. Bernuis believed that Sanger had Mingey, then age 33, in mind to replace Chisholm when he put Chisholm on the list because "[Mingey] was more attractive, dressed well, and I think he just

---

[6]CTCA argues that Chisholm's pre-May 13, 1998 events are time-barred pursuant to 29 U.S.C. § 629 because they occurred more than 300 days prior to the filing of her EEOC charge on March 11, 1999. The pre-May 13, 1998 events may be admissible either under a continuing violations theory, *see Place v. Abbott Labs.*, 215 F.3d 803, 807 (7th Cir. 2000), or, if not, as relevant background evidence, *see Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1036 n.2d (7th Cir. 1998). Offers to transfer are not in themselves adverse employment actions. *See Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456-57 (7th Cir. 1994). Thus, it appears that the pre-May 13, 1998 events may come in only as background evidence to the actual termination.

liked that image more than Valerie, who was always quite well attired and all, but obviously had been around a little bit more, more experience." (Bernius Dep. at 25-27). In early January 1999, Sanger "suddenly and unexpectedly resigned" as CEO and left CTCA. (Def. Mem. at 3.) After Sanger resigned, Richard Stephenson ("Stephenson"), Chairman of CTCA, tried to recruit Stephen Bonner ("Bonner"), a member of CTCA's Board of Directors, to be the next CEO. Both Sanger and Stephenson told Chisholm that Bonner would become the next CEO. In the meantime, Mayo assumed the position of CEO but also remained the Vice Chairman.

Around the same time, CTCA was experiencing financial difficulties. Indeed, from October 1998 through February 1999, CTCA lost over $1.3 million dollars. CTCA formed an Organizational Review Task Force ("ORTF"), led by Bernius, which determined that for financial reasons, a reduction in force ("RIF") was necessary. The ORTF decided that CTCA had to eliminate sixteen positions. In choosing which positions to eliminate, Bernius told the line managers and supervisors that they could not discriminate on the basis of sex, age or religion.

Within that group of sixteen, CTCA eliminated three Executive Assistant positions, held by Brenda Wildes ("Wildes"), Sue Costalis ("Costalis") and Chisholm. Wildes was 33 years old and worked for Sanger and Harvey in CTCA's West Palm Beach office. Without Sanger, who spent a great deal of time in that office, CTCA did not need an Executive Assistant there. Costalis was 36 years old and was Executive Assistant to Randy Kam, who headed CTCA's Information Technology Department. No particular reason for her selection has been stated.

With respect to Chisholm, according to CTCA, because CTCA had not hired a new CEO to replace Sanger, Chisholm had no one to work for. Chisholm, however, had been doing work

7

for Stephenson, Mayo and Bonner, who all remained. On February 11, 1999, CTCA terminated Chisholm and eliminated her position allegedly due to downsizing.

Two Executive Assistants remained with CTCA: Smith and Mingey. Smith was 29 years old and worked for the CFO, Randy Cartwright ("Cartwright"). When Cartwright resigned in late 1998 or early 1999, rather than discharge her, CTCA gave Smith a job in Accounts Payable, a division in the Accounting and Finance Department where she had previously worked. Mingey was by this time 35 years old and was still Mayo's Executive Assistant and stayed with him when he was named interim CEO.

On July 1, 1999, Bonner became the next CEO of CTCA. Mingey remained with Mayo as Executive Assistant to the Vice Chairman. In June 2000, Mingey resigned and CTCA hired Laverne Marcello, age 56, to be Mayo's Executive Assistant. In October 1999, CTCA hired Nancy Stahl, age 44, to became Bonner's Executive Assistant.

## DISCUSSION

The ADEA prohibits employers from discriminating against an employee who is at least 40 years of age "with respect to [her] compensation, terms, conditions or privileges or employment, because of such individual's age." 29 U.S.C. §§ 623 and 631. Plaintiff may establish age discrimination through either direct or indirect proof. *Huff* v. *UARCO, Inc.*, 122 F.3d 374, 379 (7th Cir. 1997). "Under the direct proof method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Id.*, citing *Troupe* v. *May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). The indirect method of proof

is the familiar burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973).

Chisholm relies on the indirect method. The plaintiff must show that she is over 40; that she performed her job satisfactorily; that she suffered an adverse employment action, and that a substantially younger similarly situated employee was treated more favorably. *E.g., Debs v. Northeastern Illinois University,* 153 F.3d 390, 395 (7th Cir. 1998) (explaining factors required to prove a *prima facie* case under the ADEA). A *prima facie* case creates a rebuttable presumption of discrimination and shifts the burden of production to the defendant to articulate lawful reasons for the plaintiff's discharge. *Id.* If the defendant articulates a nondiscriminatory, legitimate reason for its actions, then the presumption of discrimination dissolves and the burden shifts back to the plaintiff to prove that the defendant's proffered reasons are pretextual. *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir. 1996). The plaintiff can establish pretext by showing either that a discriminatory reason more likely than not motivated the employer or that the employer's proffered explanation is incredible. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999).

CTCA concedes that Chisholm meets the first three elements of her *prima facie* case but contends that Chisholm cannot meet the fourth element because she cannot establish that CTCA retained younger and less experienced employees to perform her job functions and that younger similarly situated employees were treated more favorably than she. (Def. Mem. at 6-7.) Chisholm in response relies on language in *Miller v. Borden, Inc.*, 168 F.3d 308 (7th Cir. 1999), which states that in RIF cases where the plaintiff's "discharge is construed as a 'fungibility' situation, to establish a *prima facie* case of discrimination [s]he need show only that [s]he was

9

treated less favorably than the substantially younger employees who absorbed h[er] [position] . . . and that these employees were similarly situated to [her]self." *Id.* at 313.

Because Executive Assistant duties were fungible, Chisholm compares herself to Mingey, who absorbed Chisholm's duties. She points to evidence that although Mingey worked as Executive Assistant to Mayo, who was on equal footing with Sanger, Mingey received a higher salary and worked less than Chisholm. Yet, CTCA terminated Chisholm rather than Mingey. As such, Chisholm sufficiently demonstrates disparate treatment to make a *prima facie* case.[7]

Thus, the burden shifts to CTCA to articulate a legitimate, non-discriminatory reason for its decision to terminate Chisholm. *St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502, 506-07 (1993); *Richter* v. *Hook-SupeRx, Inc.*, 142 F.3d 1024, 1028 (7th Cir. 1998). CTCA asserts that it "had a legitimate non-discriminatory reason for [Chisholm's] discharge, *i.e..*, financial difficulties motivating a reduction in the work force." (Mem. at 7.) Specifically, Chisholm was selected because she had no one to work for at the time.

Thus, burden shifts back to the plaintiff to point to evidence that suggests "either the stated reason was unworthy of credence or that a discriminatory reason more likely motivated" the defendant's decision. *Cliff* v. *Bd. of Sch. Commissioners of City of Indianapolis, Indiana*, 42 F.3d 403, 412 (7th Cir. 1995). The plaintiff may establish lack of credence by offering evidence "tending to prove that the employer's proffered reasons are factually baseless, were not the actual

---

[7]Moreover, CTCA treated Chisholm less favorably than Smith because CTCA found a position for Smith. "An employer implementing a RIF may not favor younger employees over older ones by finding new positions only for younger workers." *Taylor* v. *Canteen Corp.*, 69 F.3d 773, 780 (7th Cir. 1995). Like Sanger, the CFO also left CTCA in late 1998 or early 1999, around the same time that CTCA had financial difficulties. Smith was 29 years old and was the CFO's Executive Assistant but had no one to work for. CTCA found a position for Smith in Accounts Payable. But Chisholm had previously worked in the Accounting and Finance Department and was hired before Smith. Although CTCA retained Smith, it terminated Chisholm. Under these facts, Chisholm also meets the fourth element and establishes her *prima facie* case.

motivation for the discharge in question, or were insufficient to motivate discharge." *Wilson v. AM Gen. Corp.*, 167 F.3d 1114, 1120 (7th Cir. 1999), quoting *Testerman v. EDS Tech. Prod. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996); *see Cliff*, 42 F.3d at 412. "An employee discharged in a RIF is not required to produce evidence tending to prove that the employer's explanation was a lie in the sense of its being a complete fabrication; instead, [s]he must establish that age tipped the balance in favor of discharge." *Wilson*, 167 F.3d at 1120 (internal citations and quotations omitted). As such, "[t]he ultimate question is 'whether the same events would have transpired if the employee had been younger than 40 and everything else had been the same.'" *Id.*, quoting *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994).

Chisholm does not dispute that a "RIF was an economic necessity." (Resp. at 8.) Rather, she contends that CTCA's selecting her for the RIF on the basis that she had no one to work for is pretext. Chisholm points to evidence that before the RIF became an issue Sanger preferred Mingey to work for him, gave Mingey privileges that did not go to Chisholm, and put Chisholm on a list for elimination, and evidence that CTCA made multiple attempts to make her "transfer or quit" even before the RIF.

Moreover, although CTCA asserts that it fired Chisholm because she had no one to work for given that Sanger had resigned (Mem. at 10-11; Reply at 10), Chisholm had, in fact, been working for Stephenson, Mayo and Bonner when CTCA terminated her. Further, CTCA found a place for Smith when her boss resigned but did not do so for Chisholm. In addition, CTCA at the time of the RIF was recruiting a replacement for Sanger and in fact resurrected the Executive Assistant position when it hired Bonner in fall 1999. *See Swanson v. Leggett & Platt, Inc.*, No. 95 C 1074, 1996 WL 613159, at *23 (N.D. Ill. Oct. 22, 1996) (Pallmeyer, Mag. J.) (denying

11

employer's motion for summary judgment because there were unresolved questions regarding the employer's claimed financial motivations in terminating the employees and stating "[a]lthough firing an employee to achieve salary savings is permissible under the ADEA, . . . there must be some evidence that such savings actually motivated the firing decision"), *aff'd on other grounds*, 154 F.3d 730 (7th Cir. 1998). There is no evidence that CTCA's financial problems had been resolved when it hired Bonner's Executive Assistant, who, while 44 years old, was also substantially younger than Chisholm.

Together, these pieces of evidence demonstrate that if facts are viewed in a light favorable to the plaintiff, a trier of fact could reasonably infer that CTCA would not have terminated Chisholm if she had been younger than 40 and everything else had been the same. For these reasons, the motion for summary judgment must be denied.

## ORDER

For the reasons stated above, the court denies CTCA's motion for summary judgment [#13]. Cancer Research Treatment Foundation is dismissed with prejudice as a party-defendant. In the meantime, the parties are directed to meet in a sincere effort to resolve this case before trial. If settlement is not reached the case will be called for trial on October 7, 2002, at 10:00 a.m.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 18, 2002.